Memorandum. The order of the Appellate Division should be reversed. The Election Law requires an independent nominating petition for candidates to be voted for by voters of the entire State be signed by at least 20,000 voters, 100 of whom must reside in each of one half of the congressional districts in the State. (Election Law, § 138, subd 9, par [a].) To facilitate verification of compliance with the distribution requirement, the statute further provides that the sheets of the nominating petition be separated into volumes according to the congressional district of the majority of the signers’ residence. Within each volume the sheets must be arranged according to county. The cover sheet of each volume is required to set forth the name of the congressional district and each county, or portion thereof, contained in the volume. (Election Law, § 138, subd 8.)
The signatory sheets of the petition purporting to nominate a slate of electors pledged to the presidential candidacy of Eugene McCarthy were not filed or arranged in any kind of orderly fashion. Indeed, the individual signatures were solicited and collected in a haphazard manner. Virtually every sheet contains signatures from persons residing in several counties, not to mention congressional districts. For this reason, it was scarcely possible for the petitions to be collated according to congressional district. Faced with the disorderly collection of signatures, the organizers of this petition drive did not even attempt to begin to comply with the collation and segregation requirements.
There is no compliance with statute, let alone substantial compliance. This is not an idle matter of dry procedure. Most important, the statutory requirements are not merely that of binding and numbering but of classifying the signers by county and congressional district so that the existence, authenticity and qualifications of the signers may be verified. The failure to comply with the petition assembly provision *631 rendered it impossible for election officials or potential objectors to verify the presence of the requisite number of signatures from the various congressional districts. Since the requirements for assembly of the petition exist to assure adequate opportunity to inspect for proper signature distribution and judicial review, the assembly requirements must be strictly construed.